UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BURLINGTON RESOURCES, INC. | * | CIVIL ACTION |
| VERSUS | * | NO. 06-4101 |
| UNITED NATIONAL INSURANCE CO. | * | SECTION: "L" (5) |

### ORDER AND REASONS

Pending before the Court are Defendant United National Insurance Company's Motion for Summary Judgment (Rec. Doc. 5) and Plaintiff Burlington Resources Inc.'s Motion for Summary Judgment (Rec. Doc. 10). For the following reasons, the Defendant's motion is DENIED and the Plaintiff's motion is GRANTED.

I.   FACTUAL AND PROCEDURAL BACKGROUND

This case concerns whether partial liability assumed under a contract is covered by an insurance policy. Plaintiff Burlington Resources, Inc. ("Burlington") seeks recovery pursuant to an insurance policy issued by Defendant United National Insurance Company ("United National"). The insurance policy at issue (the "Policy") provides first layer excess coverage to Burlington for certain liabilities associated with Burlington's Joint Operating Agreement ("JOA") with Meridian Resources & Exploration Company ("Meridian"). The JOA, executed by Burlington and Meridian on January 15, 1999, covers oil and gas drilling on three compulsory units in Assumption Parish, Louisiana, including Thibodaux Well No. 2 (the "Well").

According to the terms of the JOA, Burlington holds a 26% non-operator interest while

1

Meridian possesses a 74% operator interest. Though the JOA does not provide Burlington with any operational or supervisory control over the Wells, it contains a provision requiring Burlington to reimburse Meridian for damages arising from Well operations.

In June 1999, a blowout occurred during drilling operations at the Well. Claimants (the "*Singleton* Plaintiffs"), alleging to be mineral interest owners and landowners, filed suit against Burlington, Meridian, and others, including United National, in the Sixteenth Judicial District Court in the Parish of St. Mary, Louisiana.[1] The *Singleton* Plaintiffs sought recovery on claims of negligence for alleged property damage, including environmental property damage, loss of earnings, loss of hydrocarbon reserves, and damage to sub-surface mineral formations. In their complaint, the *Singleton* Plaintiffs' only allegation of negligence against Burlington specifically concerned a claim that Burlington negligently failed to devise appropriate procedures to prevent further loss of minerals in the underground formations after Burlington, as non-operator, attended meetings with Meridian regarding plans for the ultimate Well shut-in and plugging. United National moved for summary judgment in the state court action, stating that the negligence allegation against Burlington was excluded from coverage under the Policy's Error and Omissions exclusion.[2]

However, the *Singleton* suit was subsequently dismissed as of compromise as Meridian

---

[1] *Ernest and Evelyn Singleton v. Northfield Insurance Co*, Case No. 104204.

[2] The Errors and Omissions exclusion provides, in pertinent part, that coverage does not apply to:
> Any negligence, error or omission, malpractice or mistake of a professional nature committed or alleged to have been committed by or on behalf of the Insured in the conduct of any of the Insured's business activities.

(Policy at 12).

and the *Singleton* Plaintiffs settled the claims for approximately $10,865,384. Meridian's insurance covered the first $1,000,000 of this amount under the JOA. Also pursuant to the JOA, Burlington is obligated to pay $2,565,000, or 26% of the remaining amount, which correlates to the percentage of its non-operating interest. Burlington's primary insurer, Liberty Mutual Insurance Company ("Liberty Mutual"), paid $2,000,000 of Burlington's obligation, the maximum amount that Liberty Mutual was required to cover under the insurance policy it issued to Burlington. Burlington subsequently sought reimbursement of the remaining balance of $565,000 from United National as its first layer excess insurer. However, United National denied coverage under the Policy.

Burlington then filed suit against United National in this Court, claiming that United National is required to reimburse it for its contractually-assumed obligation to Meridian. It consequently seeks damages for breach of contract, attorney's fees, bad-faith penalties, interest, costs, and other general and equitable relief.

On September 7, 2006, United National moved for summary judgment, claiming it was entitled to judgment in its favor on Burlington's breach of contract claim. It argues that Burlington's agreement to pay a percentage of the JOA obligations in accordance with its respective interest does not constitute an assumption of Meridian's liability, a prerequisite to the invocation of United National's contractual liability coverage. Rather, it is only a restatement of Burlington and Meridians' agreement that their obligations under the JOA are several so that each is liable only for its separate obligations. Stated differently, United National argues that the Policy would only be triggered if Burlington had assumed the total liability of Meridian and became bound as Meridian was bound. Moreover, it argues that Liberty Mutual's policy did not

contain a professional liability exclusion similar to the Errors and Omissions provision contained within the Policy, implying that Liberty Mutual's payment covered Burlington's own negligence and had no relation to the contractual liability coverage.

Burlington responds with its own motion for summary judgment on its breach of contract claim, arguing that United National breached the Policy by not reimbursing it for the settlement costs which it was contractually required to pay to Meridian under the JOA. According to Burlington, as a non-operator, it did not have any duty, and hence tort liability, to the *Singleton* Plaintiffs. Its obligation to pay settlement costs exists only because of the JOA indemnification provision. It strongly denies that any evidence exists that Liberty Mutual reimbursed it based upon general liability coverage for the negligence allegation, rather than its assumption of contractual liability for Meridian under the JOA. Nevertheless, it argues that this point is irrelevant to deciding the issue before the Court.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, demonstrate that no genuine issue as to any material fact exists and that judgment is warranted in favor of the moving party as a matter of law. Fed. R. Civ. P. 56(c). A federal court views the evidence in the light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). If both parties file motions for summary judgment, the Court views each motion independently. *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994).

Once the moving party satisfies his or her burden of demonstrating that no genuine issue of material fact exists, the non-movant must show that evidence in the record indicates that

factual issues would be resolved in his or her favor, indicating that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the evidence suggests that a reasonable jury could return a verdict for the non-moving party, then a genuine issue of material fact exists. *Id*. at 248. The non-movant's conclusory allegations or bare assertions unsupported by facts are insufficient to defeat a motion for summary judgment. *Id.* at 247-48. The non-movant must establish the existence of the elements essential to his or her case and as to which he or she bears the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Otherwise, summary judgment in the movant's favor is proper. *Id.*

## III.    ANALYSIS

At the outset, the Court must determine the applicable state law for interpretation of the Policy and the JOA. The Policy does not have a provision regarding choice of law. However, the JOA contains a choice-of-law provision which requires application of the law of the state in which the contract area is located, Louisiana. Burlington uses both Louisiana and Texas law in support of its arguments, and the thrust of United National's argument involves case law of the Louisiana Supreme Court.

A federal court sitting in diversity employs the forum state's choice of law provisions. 28 U.S.C. 1332; *see also Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). According to La. Civ. Code. art. 3537, "an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its laws were not applied to that issue." A court should look at the strength of the relevant policies of the involved states in light of place of negotiation, formation and performance of the contract, as well as location of the object of the contract. *Id.* "Applying these principles, Louisiana courts generally choose the

law of the state in which the insurance policy in question was issued to govern the interpretation of terms of the policy." *Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999); *see also Sprow v. Hartford Ins. Co.*, 594 F.2d 418, 421 (5th Cir. 1979) ("Louisiana law requires that an insurance policy be construed according to the laws where it was issued and delivered.").

In the present case, the Plaintiff states that the Policy was negotiated and issued in Texas. From a review of the JOA, it appears that this agreement was also executed in Texas. Though the place of risk may include Burlington's interests in more than one state and the Policy and the JOA were executed in Texas, the Well is located in Louisiana and the accident for which coverage is sought under the Policy occurred in Louisiana. Furthermore, the Court considers important the JOA's Louisiana choice-of-law provision. The Court will apply Louisiana law to the Policy and the JOA. However, the general rules of contract and interpretation according to the laws of Louisiana and Texas are similar and would lead to the same result.

As an insurance policy constitutes a contract between the parties, the general rules of contract construction and interpretation apply. *Lewis v. Hamilton*, 652 So. 2d 1327, 1329 (La. 1995) (citing *Louisiana Ins. Guar. Ass'n v. Interstate Fire and Casualty Co.*, 93-0911 (La. 1994); 630 So.2d 759, 763 and *Smith v. Matthews*, 611 So.2d 1377, 1379 (La. 1993)); *Magnon v. Collins*, 739 So.2d 191, 196 (La. 1999) (citing *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759 (La. 1994)). "The interpretation of a contract is the determination of the common intent of the parties." *Lewis*, 652 So.2d at 1329. Thus, a court must interpret a contract to encompass only those things that the parties intended it to include. La. Civ. Code art. 2051. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent," La. Civ. Code art. 2046, and

the insurance contract must be enforced as written. *Marcus v. Hanover Ins. Co.*, 740 So.2d 603, 606 (La. 1999). When words in a written contract are susceptible to more than one meaning, the court applies the meaning that best conforms to the contract's object, and if contract provisions are capable of different meanings, the meaning that renders it effective, rather than ineffective, is employed. La. Civ. Code arts. 2048-49. Each provision must be interpreted considering all other contract provisions so that each provision is given the meaning suggested by the contract as a whole. La. Civ. Code. art. 2050.

Generally, insurance policies are "construed to effect, not deny coverage." *Yarbrough v. Fed. Land Bank of Jackson*, 731 So.2d 482, 488 (La. App. 2 Cir. 1999). "Louisiana law applies a rule of 'strict construction' that requires that any doubt or ambiguity in an insurance contract be construed in favor of coverage to the insured and against the insurer who issued the policy." *Clayton Williams Energy, Inc. v. National Union Fire Ins. Co.*, 2004 WL 2452780, at *16 (E.D. La. Nov. 1, 2004) (citing *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759 (La. 1994)).[3]

Though an insured bears the burden of establishing that the insurance contract applies to a claim for which it seeks coverage, the insurer must demonstrate that a policy provision excludes or limits coverage once the insured shows that the policy is applicable. *Turnstall v. Steirwald*, 809 So.2d 916, 921 (La. 2002). This burden placed on the insurer is a heavy one

---

[3]If any ambiguity exists, courts must try to determine the reasonable expectations of the parties according to industry customs and usage. *Clayton Williams,* 2004 WL 2452780*,* at*16. "Courts will protect the [insured's reasonable expectations]....regarding the coverage afforded by the insurance contracts even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer." *Id.*, n.35 (quoting *Louisiana Ins. Guar. Assoc*., 630 So.2d at 764, n.9 (internal citation omitted)).

since the policy must contain a clear and unambiguous expression of exclusion from coverage. *Auster Oil & Gas, Inc. V. Stream*, 891 F.2d 570, 580 (5th Cir. 1990); *Scarborough v. Northern Assurance Co. Of Am.*,718 F.2d 130, 134 (5th Cir. 1983).

With these burdens and rules of contract interpretation in mind, the Court first considers the Policy language at issue in the present case.  The Policy provision in dispute provides, in pertinent part, as follows:

> 1. Coverage
>    United National...hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for *all sums* which the Insured shall be obligated to pay *by reason of the liability*;
>    A.    Imposed upon the Insured by law; or
>    B.    *Assumed under contract or agreement* by the Named Insured and/or any officer, director, stockholder, partner or employee of the Named Insured, while acting in his capacity as such.
>    For damages on account of:
>    1.    Personal Injury
>    2.    Property Damage...
>    caused by or raising out of each occurrence happening anywhere in the world.

(Policy at 3).  The plain language of this contract states that United National will provide coverage for any amount of money which Burlington must pay if it assumed such liability under a contract or agreement.  If United National had intended to limit coverage to only those sums Burlington was obligated to pay by reason of total assumption of liability, it could have provided for this language in the contract.  The word "sums" is defined broadly to encompass "all" and neither the words "liability" nor "assumed under contract" are qualified or limited in any detail or manner.  Nor do other sections of the Policy, such as the paragraph on "Limit of Liability" or the sections titled "Exclusions" and "Conditions," contain any wording suggesting that the Policy provides for coverage only in instances in which Burlington contractually assumes one

8

hundred percent of the liability of a third party, as United National argues.[4]

United National argues that the Policy language is not contained within the Policy's exclusion section, but rather is found in the general provision granting coverage, and hence the burden of persuasion remains with Burlington.  The Court is not persuaded by this formulaic approach.  Simply because the Policy language that the parties use in support of their respective arguments is not found within the "exclusion" section of the insurance contract does not automatically designate the present issue as a question of coverage rather than exclusion.  The Court determines from the plain reading of the Policy that partial contractual assumption of liability falls within coverage.  Thus, the issue of whether Burlington's partial payment towards the *Singleton* settlement is subject to reimbursement is an issue of exclusion from coverage, which United National must show is expressly excluded from the Policy.

United National cites *Lewis v. Hamilton*, 652 So.2d 1327 (La. 1995), in support of its motion for summary judgment, arguing that the definition of the word "assume" set forth by the Louisiana Supreme Court requires that Burlington must be liable to the *Singleton* plaintiffs to the same extent or degree that Meridian would have been liable in order to trigger an obligation to provide excess coverage to Burlington.  Instead, Burlington is simply paying its share of liability pursuant to the JOA, rather than stepping into Meridian's shoes.

However, *Lewis* does not support United National's argument.  In *Lewis,* the tortfeasor

---

[4]Moreover, this determination comports with the parties' intent.  Burlington argues that to give the Policy a contrary interpretation would largely eliminate coverage every time it acted as a non-operator, a traditional part of its business.  Burlington states it would not have paid substantial premiums when it would be denied coverage for a normal and routine business risk.  The Court agrees that an inapposite conclusion would not comport with the parties' intent at the time of contracting.

was involved in a car accident during the course and scope of her employment, though she was driving a car that she owned at the time. Her individual liability insurer, from whom recovery was sought by the injured plaintiff, consequently argued that the employer's liability insurer should cover the costs of damages as the employer's insurance contract provided primary coverage for liability assumed by the employer under an "insured contract." *Lewis*, 652 So. 2d at 1329. The employer's liability insurer argued that the employment relationship constituted an "insured contract" because the employer assumed the employee's tort liability for torts committed by the employee in the course and scope of employment under Louisiana Civil Code art. 2320. *Id.* The Court held that the employment relationship between the employer and its employee tortfeasor did not constitute an insurance contract under the employer's insurance policy. "It was the law governing the status [of the employer-employee relationship], and *not any contractual assumption of liability*, which made the [employer] liable for its employee's tort." *Id.* at 1330 (emphasis added).

This is in direct contrast to the present case where liability does not arise by way of legal operation, but only because the contract signed by Burlington and Meridian provided for Burlington to assume Meridian's liability. The JOA in no way created any type of vicarious tort liability, which lies at the basis of the *Lewis* decision. Applicable state law specifically provides that a non-operator of a well is not liable for the tortious acts of the operator, unless otherwise agreed. *See Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge*, 424 F.2d 684, 686 (5th Cir. 1970); *Pan American Petroleum Corp. v. W. W. Long*, 340 F.2d 211, 226 (5th Cir. 1964). Thus, absent the JOA provision requiring Burlington to pay 26% of Meridian's liability for any settlement amount, Burlington would not be liable for any of Meridian's actions by

operation of law or contract.

Equally important, the Louisiana Supreme Court in *Lewis* stated that "the definition assume is to take on, become bound as another is bound, or put oneself in place of another as to an obligation or liability" *Lewis*, 652 So.2d at 1330 (quoting Black's Law Dictionary 122 (6th ed. 1990)). .   However, the Court immediately followed this statement with language imparting another common definition of the term– "[a] second definition is 'to take upon oneself (the debts or obligations of another)." *Lewis*, 652 So.2d at 1330 (quoting Webster's New Universal Unabridged Dictionary 91 (1989)).  Nothing within this second alternative definition of the word "assume" indicates that all, rather than partial, assumption of debts and obligations is required. This language also indicates that the Louisiana Supreme Court did not consider itself bound by one particular definition of the term, but rather looked to the general prevailing or common meaning from a variety of sources.

This determination is supported by the Court's language that followed: "Under these definitions, the word 'assume' in [the employer's insurance] policy requires *some* exercise of volition on the part of the insured [employer] to undertake or incur liability which did not exist prior to the assumption." *Lewis*, 632 So.2d at 1330 (emphasis added).  Thus, the Court indicated that it did not consider one particular source as the definitive authority as to the legal meaning of the word "assume" and also signified that total assumption of liability is not required. Accordingly, the *Lewis* case does not support United National argument that partial assumption is not permitted under Louisiana law.  Nor does the Court ascertain any reason based in public

policy why partial assumption of another's liability should be forbidden.[5]

The Court next turns to the relevant JOA provision in order to determine if it qualifies as a contract under which Burlington assumed liability and thus falls under the Policy's coverage provision. It is undisputed that the JOA constitutes a contract and the Well blowout occurred during the period covered by the United National policy.[6] The JOA provides the following language regarding the contractual relationship between the two parties:

> ...[Meridian, as Operator,] shall *conduct and direct and have full control of all operations* on the Contract Area as permitted and required by, and within the limits of this agreement. In its performance of services hereunder for the Non-Operators [Burlington], Operator shall be an independent contractor *not subject to the control or direction of the Non-Operators* except as to the type of operation to be undertaken in accordance with the election procedures contained in the agreement. Operator shall not be deemed, or hold itself out as, the agent of the Non-Operators with authority to bind them to any obligation or liability assumed or incurred by Operator as to any third party.

(JOA at 4) (emphasis added). Thus, Burlington has no operational or supervisory control over the Well and Meridian acts as an independent contractor will full control over Well operations.

Burlington argues that it does not owe a duty to the *Singleton* plaintiffs, nor could it be liable to them in tort, in spite of any allegations made by the *Singleton* plaintiffs in their state court complaint.[7] As stated previously, Louisiana law holds that a non-operator without

---

[5] *See also Walk Haydel & Assocs. Inc.v. Coastal Power Produc. Co.*, 98-0193, p. 2 (La. App. 4 09/30/98), 720 So.2d 372, 373. Though that case dealt with whether the terms of a handwritten settlement memorandum were enforceable settlement agreement terms, the terms did contain a provision which required one party to partially assume the liability of another and the Court found the memorandum an enforceable agreement.

[6] The Policy provides coverage for the time period December 31, 1997 to December 31, 2000. (Policy at 1).

[7] As stated previously, the *Singleton* Plaintiffs alleged that Burlington was negligent in failing to devise appropriate procedures to prevent further loss of minerals in the underground formations.

supervisory powers bears no responsibility to third parties for claims arising out of negligent operation of a drill site.  *See Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge*, 424 F.2d 684, 686 (5th Cir. 1970); *Pan American Petroleum Corp. v. W. W. Long*, 340 F.2d 211, 226 (5th Cir. 1964).  As a result, any tort liability arising from the operation of the Well belongs only to Meridian, absent the existence of an agreement to the contrary.  *See Transcontinental Gas*, 424 F.2d at 684.

The JOA does contain a provision which makes Burlington partly responsible for the costs of any third party claim or suit arising from operations, including in instances where Meridian was at fault or negligent.   The JOA states that "all costs and liabilities incurred in operations under this agreement shall be borne and paid...by the parties as their interests are set forth [in the JOA]."  (JOA at 2).  Furthermore, the JOA provides that "all costs and expenses of handling, settling or otherwise discharging such claim or suit shall be the joint expense of the parties participating in the operation from which the claim or suit arises." (JOA at 15).  Thus, by the express terms of the JOA, Burlington agreed to assume the tort liability of Meridian to the extent of 26%, or in other words, to the extent of its non-operator interest as set forth in the JOA.

Additionally, the damage for which payment is sought in this case is included within the specified categories of damages covered by the Policy.  The Settlement payment compensates the *Singleton* Plaintiffs for alleged damage to tangible property interests, including environmental property damage and loss of hydrocarbons, caused by the Well blowout.  Thus, the plain language of the Policy requires United National to reimburse Burlington for its contractual payment to Meridian.

**IV.     CONCLUSION**

For the foregoing reasons, the Defendant's motion for summary judgment is DENIED and the Plaintiff's motion for summary judgment is GRANTED.

New Orleans, Louisiana, this 13th day of  February, 2007.

_____

UNITED STATES DISTRICT JUDGE